# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| **United States of America,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Criminal Action Number** |
| | ) | **10-00004-CR- -SOW** |
| **Thomas S. Ginn,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# Report and Recommendation

Pending before the Court is the MOTION TO SUPPRESS SEIZED EVIDENCE filed on March 211, 2010 (Doc. #30) by defendant Thomas S. Ginn ("Ginn"). Over three days – April 7, 2010, April 20, 2010, and June 8, 2010 – the undersigned held an evidentiary hearing on the defendant's motion. Ginn was present and was represented by his counsel, John Osgood. The government was represented by Assistant United States Attorney Mike Green. At the evidentiary hearing, the government called two witnesses, Officer B.J. Fisher and Officer Jason Wilhoit both with the St. Joseph City Missouri Police Department. Ginn testified on his own behalf as did his wife, Michelle Ginn. Additionally, the following exhibits was admitted into evidence:

| Number | Description |
|---|---|
| Govt. ##1-5 | Photographs |
| Govt. #9 | Search warrant, application, and affidavit |
| Deft. ##1, 4, 16-18, 20-21, 23, 25-28 | Photographs |
| Deft. # 29 | Map |
| Deft. # 30 | Coffee table |

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

## PROPOSED FINDINGS OF FACT[1]

1. Officers B.J. Fisher and Jason Wilhoit are patrol officers with the St. Joseph Missouri Police Department. Tr. at 12, 92.[2]

2. During the early morning hours of November 1, 2009, Officer Fisher was patrolling midtown St. Joseph in his patrol car. Tr. at 13

3. At approximately 1:00 a.m., Officer Fisher observed a Chevy Suburban traveling in the opposite direction as his patrol car on Sylvanie Street. Tr. at 13-15.

4. Officer Fisher recognized the driver as Ginn. Tr. at 14-15.

5. About three weeks prior, Officer Fisher had seen Ginn in the St. Joseph jail. Tr. at 14.

6. As the Chevy Suburban was passing his patrol car, Officer Ginn noted that the license plate light on the rear of Ginn's vehicle was not working. Tr. at 15-16.

7. Officer Fisher then turned his patrol car around and began looking to catch up and find Ginn's vehicle. Tr. at 16-17.

8. After Ginn engaged in some evasive driving (including circling around the block), Officer Fisher finally found the Chevy Suburban parked in an alley without anyone in the vehicle. Tr. at 17-20.

---

[1] In reaching this conclusion, the Court has been required to make some credibility determinations, particularly as they pertain to the two officers' recitation of the facts surrounding Ginn's apprehension as compared to the testimony of Ginn and his wife. In making such determinations, the Court considered (1) the demeanor of the witnesses on the stand, (2) the interest the witnesses had in the outcome of the motion, and (3) the opportunity of the witnesses to hear, observe, and recall what was said or done. In the end, the Court concluded that the two officers were more credible witnesses regarding the incidents on November 1, 2009.

[2] References to the transcript pages for the proceedings on April 7, 2010 are not designated with any asterisk. References to the transcript pages for the proceedings on April 20, 2010 are designated with a single asterisk, "*." References to the transcript pages for the proceedings on June 8, 2010 are designated with double asterisks, "**."

9. While pursuing Ginn's vehicle, Officer Fisher requested assistance on his radio. Tr. at 20.

10. In response, Officer Wilhoit immediately responded to the area. Tr. at 20-21, 93.

11. After finding the abandoned Chevy Suburban, Officer Fisher began driving around on nearby streets to locate Ginn. Tr. at 21.

12. Officer Fisher and Officer Wilhoit found Ginn walking in the street. Tr. at 22, 95.

13. As the officers approached Ginn, Officer Wilhoit said "Don't move," at which point, Ginn continued walking and then began running. Tr. at 22, 96-98.

14. Although Officer Wilhoit was yelling "Stop," Ginn continued to run away from the officers. Tr. at 22, 66-67.

15. Eventually Ginn ran up the front porch of the residence at 1519 Charles. Tr. at 23.

16. Neither Officer Fisher nor Officer Wilhoit knew that 1519 Charles was a residence where Ginn sometimes resided. Tr. at 23, 45, 98-99.

17. As Officer Wilhoit was pursuing Ginn onto the porch, he observed Ginn reach behind himself and display a handgun at which point, Officer Wilhoit yelled "Gun." Tr. at 24, 99-100.

18. Ginn ran into the residence at 1519 Charles and tried to shut the door in the face of the officers. Tr. at 24, 99.

19. Eventually, Ginn forced the door shut and the officers began kicking at the door. Tr. at 24, 67, 101-02.

20. After approximately 15 seconds to one minute, the officers kicked the door in and entered the residence. Tr. at 24-26, 103-04.

21. Both Ginn and his wife, Michelle Ginn, were in the room the officers entered. Tr. at 28, 105, 5*, 4**.

22. As the officers entered the residence, Ginn removed his sweater and stood in a "fighting" stance. Tr. at 26, 104, 47*.

23. Officer Wilhoit then "tasered" Ginn. Tr. at 26-27, 104.

24. Eventually, the officers handcuffed Ginn. Tr. at 28, 106.

3

25. Ginn was arrested, placed in a patrol car, and taken to the police station for investigation of resisting arrest. Tr. at 29-30.

26. After Ginn was taken from the scene, Officer Fisher went back into the residence at 1519 Charles where Michelle Ginn was engaged in a conversation with Officer Wilhoit about who lived in the residence. Tr. at 30, 107-08.

27. While this conversation was occurring, Officer Fisher saw marijuana, a scale, and a marijuana grinder on the bottom shelf of a coffee table. Tr. at 31.

28. In addition, Officer Fisher also saw two boxes of plastic baggies on a couch and another box of plastic baggies on the floor. Tr. at 31.

29. Officer Fisher picked up the scale and field tested the residue on the scale. Tr. at 34-35, 110.

30. The residue tested positive for cocaine. Tr. at 35, 39, 110.

31. Officer Fisher asked Michelle Ginn for consent to search the residence, which she refused. Tr. at 36, 33**, 34**.

32. Thereafter, a representative of the Buchanan County Drug Task Force applied for and obtained a search warrant for the residence. Tr. at 37-38, 111.

33. The ensuing search of the residence found contraband, including several weapons.

## PROPOSED CONCLUSIONS OF LAW

In his MOTION TO SUPPRESS, Ginn asserts that law enforcement officers violated his constitutional rights in their actions in the early morning hours of November 1, 2009. Specifically, Ginn alleges:

(1) law enforcement officers conducted an improper warrantless search when they entered his residence to arrest him (and, thus, any plain viewing of contraband in the residence was improper), and

(2) the search warrant ultimately obtained by law enforcement officers was improperly obtained because the officers failed to disclose critical facts.

Without question, individuals possess a privacy interest in their property that is protected by the Fourth Amendment. *See*, *e.g.*, *United States v. Gwinn*, 191 F.3d 874, 878 (8th Cir. 2000). As protection for the citizen from unwarranted government intrusion, the Fourth Amendment generally requires law enforcement to obtain a court-sanctioned search warrant based on probable cause before undertaking a search of private property. *See*, *e.g.*, *Shade v. City of Farmington, Minnesota*, 309 F.3d 1054, 1059 (8th Cir. 2000). Those privacy interests are particularly enhanced when a search of an individual's domicile or residence is at issue. *See*, *e.g.*, *Welsh v. Wisconsin*, 466 U.S. 740, 748, 104 S.Ct. 2091, 2097 (1984) ("It is axiomatic that the physical entry of the house is the chief evil which the wording of the Fourth Amendment is directed."). In this case, the law enforcement officers did not obtain a search warrant until after they had already entered the residence at 1519 Charles, arrested Ginn, and observed incriminating materials in the apartment.

While it is true in most cases that police officers may not enter or search a home without a warrant authorizing them to do so, it is nonetheless settled constitutional law, as well as common sense, that emergency circumstances may take precedence over traditional Fourth Amendment concerns and permit officers to take actions that might otherwise require a warrant.

> Police officers may not enter or search a home without a warrant unless justified by exigent circumstances. . . . The exception justifies immediate police action without obtaining a warrant if lives are threatened, a suspect's escape is imminent, or evidence is about to be destroyed.

*United States v. Ball*, 90 F.3d 260, 263 (8th Cir. 1996). In assessing these potential dangers, "[t]he question . . . is not whether there was actual probable cause and exigent circumstances, but whether the officers could reasonably have thought so." *Greiner v. City of Columbia*, 27 F.3d 1346, 1353 (8th Cir. 1994).

Particularly applicable to this case, the Supreme Court has held that "the hot pursuit of a

5

fleeing suspect can be an exigent circumstance justifying a warrantless arrest in one's home." *United States v. Schmidt*, 403 F.3d 1009, 1013 (8th Cir. 2009) (*citing Minnesota v. Olson*, 495 U.S. 91, 100-01, 110 S.Ct. 1684, 1690 (1990). However, not all police pursuits justify a warrantless intrusion into a residence. In *Welsh v. Wisconsin*, 466 U.S. 740, 753, 104 S.Ct. 2091, 2099 (1984), the Supreme Court instructed courts to weigh the "gravity of the underlying offense" in determining the legality of the entry. The Court further cautioned that probable cause to believe that a serious crime has been committed does not, in and of itself, create an exigency. *Id*. The Court in *Welsh* also required that the government demonstrate an "immediate or continuous pursuit [of the suspect] from the scene of [the] crime," in order to fall within the hot-pursuit exception. *Id.*

In this case, under the particular facts presented, the Court concludes that the law enforcement officers did reasonably perceive exigent circumstances at the time they made the decision to enter the residence at 1519 Charles. At time the officers made that decision, they had reason to believe:

- When Ginn was approached by law enforcement officers regarding his traffic offence, he refused to heed their orders to stop and ran off into a residence, locking the door, and thereafter forcibly attempting to keep the officers from opening the door.

- Prior to entering the residence (which the officers did <u>not</u> know was Ginn's residence), Ginn was seen displaying what appeared to one officer to be a handgun.

6

Based on this evidence, an objectively reasonable officer on the scene could have believed that there was an exigency and that a suspect was attempting to escape[3] and/or there was an immediate danger to innocent third persons. These circumstances justified all of the officers actions up to and including entry of the residence to arrest Ginn.

However, the presence of exigent circumstances does not afford law enforcement officers *carte blanche* permission to undertake any actions. Instead, it is understood that when there is a concern that innocent bystanders are endangered, the officers' actions are justified only to the extent necessary to dispel such danger. In this case, the Court finds that the officers properly limited their "exigent" conduct upon entry by arresting Ginn and questioning Michelle Ginn as to her identity and Ginn's relationship to the residence.

In the course of performing the routine questioning of Michelle Ginn, officers noted several items of apparent contraband in the house in plain view. Thereafter, officers did not seize the contraband, but rather sought and obtained a search warrant for the residence at 1519 Charles. The conduct of the officers fully conformed with the Constitution.

---

[3] Although the traffic violation was a mere "infraction," under Missouri law, the officers were entitled to approach Ginn and arrest him. *State v. Mondaine*, 178 S.W.3d 584, 589 (Mo. App. [E.D.] 2005) (pursuant to MO. REV. STAT. § 544.216, "a law enforcement officer may arrest a person without a warrant when he sees the person violating any law of this state, or has reasonable grounds to believe the person has violated any law of this state, including a misdemeanor or infraction"). However, such an infraction might not justify a warrantless intrusion into a residence. *Compare Welsh*, 466 U.S. at 753, 104 S.Ct. at 2099 ("[A]n important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made."). However, once Ginn refused to heed the officers' command to stop, the offence was escalated to resisting arrest – an offense that surely justifies the exigent circumstance exception, particularly where a weapon is brandished during the resistance.

Ginn also argues that probable cause was lacking to support the issuance of the warrant in violation of *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674 (1978). The Court disagrees. The role of a court reviewing a search warrant "is to ensure that the evidence as a whole provides a substantial basis for finding probable cause to support the issuance of the search warrant [and the] existence of probable cause depends on whether, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (*citations omitted*). *See also United States v. Leon*, 468 U.S. 897, 914, 104 S.Ct. 3405, 3416 (1984) ("the preference for warrants is most appropriately effectuated by according great deference to a magistrate's determination" as to whether an affidavit establishes probable cause.)

Reviewing the affidavit supporting the issuance of this search warrant,[4] the Court has no difficulty in concluding that the search warrant was issued with the requisite probable cause. To prevail on a *Franks* challenge to a search warrant application, a defendant must establish "that a false statement was included in the affidavit knowingly and intentionally or with reckless disregard for its truth, and that the affidavit's remaining content is insufficient to establish probable cause." *United States v. Roberson*, 439 F.3d 934, 939 (8th Cir. 2006). In addition, while *Franks* involved a false statement included in an affidavit, its reasoning has been extended to allow challenges to affidavits based on alleged deliberate omissions. *See*, *e.g.*, *United States v. Jacobs*, 986 F.2d 1231, 1234 (8th Cir.1993); *United States v. Dennis*, 625 F.2d 782 (8th

---

[4] "When the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir.1999) (*quoting United States v. Gladney*, 48 F.3d 309, 312 (8th Cir.1995)).

Cir.1980).  To prevail on a *Franks* claim based on an omission of fact, the defendant must prove (1) that facts were omitted with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading, and (2) that the affidavit, if supplemented with the omitted information, would not have been sufficient to support a finding of probable cause. *United States v. Allen*, 297 F.3d 790, 795 (8th Cir.2002).  Ginn has failed to meet this burden.

    Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** Ginn's MOTION TO SUPPRESS SEIZED EVIDENCE filed on March 11, 2010 (Doc. #19), and **DENYING** Ginn's request for a separate *Franks* hearing.

Counsel are reminded that each has 10 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same.  A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

                                                              */s/ John T. Maughmer*
                                                            **John T. Maughmer**
                                                **United States Magistrate Judge**